Lesley McCall Grossberg
N.J. Bar No. 21682008
BAKER & HOSTETLER LLP
2929 Arch Street
Cira Centre, 12th Floor
Philadelphia, PA  19104-2891
Telephone: 215.568.3100
Facsimile:  215.568.3439

*Attorneys for Plaintiff ThermoLife*
*International, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, <br><br>            Plaintiff, <br><br>    v. <br><br> PROSOURCE PERFORMANCE PRODUCTS; VITAMIN SHOPPE, INC.; NETRITION, INC.; DPS NUTRITION; SUPPLEMENT CENTRAL; PURUS LABS, INC.; JOHN'S LONE STAR DISTRIBUTION, INC.; I'LLPUMPYOUUP.COM; A1 SUPPLEMENTS, INC.; WORLD CLASS NUTRITION; ALL STAR HEALTH; MUSCLE & STRENGTH, LLC; I-SUPPLEMENTS.COM; E-VITAMINS; SUPPZ INC.; LOCKOUT SUPPLEMENTS; SUPPLEMENTWAREHOUSE.COM, INC.; TF SUPPLEMENTS; FITRX.COM, INC.; VITACOST.COM; NUTRA HEALTH SUPPLY; and PLANETARY NUTRITION, <br><br>            Defendants. | CASE NO.: <br><br> COMPLAINT <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff ThermoLife International, LLC ("Plaintiff") hereby alleges for its Complaint against Prosource Performance Products ("Prosource"); Vitamin Shoppe, Inc. ("Vitamin

Shoppe"); Netrition, Inc.; DPS Nutrition; Supplement Central; Purus Labs, Inc. ("Purus Labs"); John's Lone Star Distribution, Inc. ("Lone Star Distribution"); I'llPumpYouUp.com; A1 Supplements, Inc.; World Class Nutrition; All Star Health; Muscle & Strength, LLC; I-Supplements.com; E-Vitamins; Suppz Inc.; Lockout Supplements; SupplementWarehouse.com, Inc.; TF Supplements; Fitrx.com, Inc.; Vitacost.com; Nutra Health Supply; and Planetary Nutrition (collectively, "Defendants"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

## I.      THE PARTIES

1.      Plaintiff is a limited liability company organized and existing under the laws of Arizona, with a place of business at 1811 Ocean Front Walk in Venice, California, 90291.

2.      Plaintiff is the owner of the following United States Patents:

     a.      Patent No. 8,466,187, titled "Amino Acid Compositions" (Exhibit A);

     b.      Patent No. 8,569,368, titled "Amino Acid Compositions" (Exhibit B);

     c.      Patent No. 8,569,369, titled "Amino Acid Compositions" (Exhibit C);

     d.      Patent No. 8,952,047, titled "Betaine Compounds" (Exhibit D);

     e.      Patent No. 8,952,046, titled "Amino Acid Compositions" (Exhibit E); and

     f.      Patent No. 8,952,045, titled "Amino Acid Compositions" (Exhibit F).

3.      The above patents are referred to herein as the "patents in suit."  Patent No. 8,466,187 is, as of the time of the filing of this Complaint, undergoing re-examination or review proceedings before the United States Patent and Trademark Office, but not with respect to claims that are asserted in this matter against Defendants.

4.      Defendant Prosource is an entity organized and existing under the laws of New Jersey with a principal place of business at 2231 Landmark Place in Manasquan, New Jersey, 08736.

5.      Defendant Vitamin Shoppe is a corporation organized and existing under the laws of Delaware.  Vitamin Shoppe maintains places of business at 370 Route 3 West in Clifton, New Jersey; 130 Route 17 North in East Rutherford, New Jersey; 2702 Route 22 West in Union, New

Jersey; and 2100 88th Street in North Bergen, New Jersey, where it has retail stores. Vitamin Shoppe also maintains a place of business at 2101 91st Street in North Bergen, New Jersey, 07047.

6.     Defendant Netrition, Inc. is an entity organized and existing under the laws of New York with a principal place of business at 25 Corporate Circle, Suite 118 in Albany, New York, 12203.

7.     Defendant DPS Nutrition is an entity organized and existing under the laws of Pennsylvania with a principal place of business at 29 Stauffer Industrial Park in Taylor, Pennsylvania, 18517.

8.     Defendant Supplement Central is an entity organized and existing under the laws of Pennsylvania with a principal place of business at 406 Parkway View Drive in Pittsburgh, Pennsylvania, 15205.

9.     Defendant Purus Labs is a corporation organized and existing under the laws of Texas with a principal place of business at 11370 Pagemill Road in Dallas, Texas, 75243.

10.     Defendant Lone Star Distribution is a corporation organized and existing under the laws of Texas with a principal place of business at 11370 Pagemill Road in Dallas, Texas, 75243.

11.     Defendant I'llPumpYouUp.com is an entity organized and existing under the laws of Florida with a principal place of business at 527 D Street in Clearwater, Florida, 33756.

12.     Defendant A1 Supplements, Inc. is an entity organized and existing under the laws of Tennessee with a principal place of business at 860 Lakemont Drive in Louisville, Tennessee, 37777.

13.     Defendant World Class Nutrition is an entity organized and existing under the laws of Georgia with a principal place of business at 355 Brogdon Road, Suite 205 in Suwannee, Georgia, 30024.

14.     Defendant All Star Health is an entity organized and existing under the laws of California with a principal place of business at 5951 Skylab Road in Huntington Beach, California, 92647.

15.     Defendant Muscle & Strength, LLC is an entity organized and existing under the laws of South Carolina with a principal place of business at 1180 First Street South in Columbia, South Carolina, 29209.

16.     Defendant I-Supplements.com is an entity organized and existing under the laws of Ohio with a principal place of business at 7227 Montgomery Road in Cincinnati, Ohio, 45236.

17.     Defendant E-Vitamins is an entity organized and existing under the laws of Michigan with a principal place of business at 51260 Danview Technology in Shelby Twp., Michigan, 48315.

18.     Defendant Suppz Inc. is an entity organized and existing under the laws of Wisconsin with a principal place of business at 1535 LaFollette Street in Fennimore, Wisconsin, 53809.

19.     Defendant Lockout Supplements is an entity organized and existing under the laws of Texas with a principal place of business at 344 E. Louisiana Drive in McKinney, Texas, 75069.

20.     Defendant SupplementWarehouse.com, Inc. is an entity organized and existing under the laws of Wisconsin with a principal place of business at 2440 Corporate Preserve Drive in Oak Creek, Wisconsin, 53154.

21.     Defendant TF Supplements is an entity organized and existing under the laws of Texas with a principal place of business at 6666 Gulf Freeway in Houston, Texas, 77087.

22.     Defendant Fitrx.com, Inc. is an entity organized and existing under the laws of Illinois with a principal place of business at 1629 S. Roselle Road in Roselle, Illinois, 60172.

23.     Defendant Vitacost.com is an entity organized and existing under the laws of Florida with a principal place of business at 5400 Broken Sound Boulevard Northwest, Suite 500 in Boca Raton, Florida, 33487.

24.     Defendant Nutra Health Supply is an entity organized and existing under the laws of Tennessee with a principal place of business at P.O. Box 342695 in Memphis, Tennessee, 38184.

25.     Defendant Planetary Nutrition is an entity organized and existing under the laws of North Carolina with a principal place of business at 6451 Triangle Plantation Drive, Suite 108 in Raleigh, North Carolina, 27616.

## II.     JURISDICTION, VENUE, AND JOINDER

26.     This is an action, in part, for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.  This action is also, in part, for false designation of origin and false advertising under 15 U.S.C. § 1125 (the "Lanham Act"), which falls under federal jurisdiction.  This action is also, in part, for false marking under 35 U.S.C. § 292.  Moreover, the Court has supplemental jurisdiction over all state law claims.

27.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

28.     This Court has personal jurisdiction over Defendants.  By way of example and without limitation, Defendants, directly or through intermediaries (including distributors, retailers, and others), make, manufacture, ship, distribute, advertise, market, offer for sale, and/or sell dietary supplement products that infringe on one or more claims of the patents in suit (hereinafter the "accused products"), which include without limitation products sold under the "NOXygen," "Condense, and "D-Pol" brand names, in the United States, the State of New Jersey, and the District  of New Jersey ("this District").

29.     By way of further example and without limitation, Defendants have purposefully and voluntarily placed the accused products into the stream of commerce with the expectation that they will be purchased in the State of New Jersey, and the products are actually purchased in this District.

30.     By way of further example and without limitation, Defendant Purus Labs has purposefully and voluntarily sold, and/or offered to sell and provide, the accused products to

retailers, resellers, and distributors in this District, including but not limited to Defendants Vitamin Shoppe and Prosource.

31.     By way of further example and without limitation, Defendant Lone Star Distribution, through its officers, employees, agents, and regional offices, as well as through its online store for its resellers available at www.loanstardistribution.com, transacts business throughout the United States, including in this District.

32.     By way of further example and without limitation, Defendants, with the exception of Purus Labs, Lone Star Distribution, and Vitamin Shoppe, appear to derive their revenue principally from product sales on the Internet through their online stores and websites, and they transact business throughout the United States, including in this District.

33.     Joinder is proper under 35 U.S.C. § 299. Joinder is appropriate here because there is a logical relationship between the claims and a substantial evidentiary overlap in the facts giving rise to the cause of action against each Defendant. The infringement claims against all Defendants relate to the same accused products manufactured, supplied, and/or provided by Purus Labs.

### III.     THE DEFENDANTS' INFRINGEMENTS

34.     Defendants have committed the tort of patent infringement within this District by virtue of the fact that Defendants have formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold the accused products in this District, and continue to do so.

### A.  DIRECT INFRINGEMENTS

35.     Defendants' employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities, have taken, used, and orally administered the accused products.

36.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue

of their inclusion in the products, infringe one or more claims of one or more of the patents in suit.

37.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for certain purposes that, by virtue of their inclusion in the products for such purposes, infringe one or more claims of one or more of the patents in suit, and as a result, when Defendants' employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products, they are practicing the methods disclosed in those claims.

38.     These infringing ingredients, and/or combinations thereof, include, without limitation, Betaine Anhydrous, Beta Alanine, Nitratene$^{TM}$ (sodium nitrate), Betaine Nitrate, D-Aspartic Acid, and Nitratine (sodium nitrate) as set forth on Defendants' labels for the accused products.

39.     The purposes for which these ingredients are included in the accused products are, without limitation, to increase athletic performance, increase vasodilative characteristics and bioabsorption of amino acids, increase distribution of amino acids in muscles, prevent the development of nitrate tolerances, and/or increase solubility of amino acids of the end-users of the products.

40.     For instance, and just as an example, the labels and/or advertisements for the accused products state that they provide "improv[ed] exercise performance", "[s]uperior nutrient delivery due to heightened and sustained vasodilation", "increased N. O. production", and "enhanced nutrient absorption."

41.     Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by Defendants or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claim of one or more of the patents in suit, and these employees, agents, representatives and other persons sponsored by Defendants

or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

42.     Therefore, Defendants are direct infringers of one or more claims of one or more of the patents in suit, and Defendants practice the methods as set forth in one or more claims of one or more of the patents in suit.

### B.  INDIRECT INFRINGEMENTS

43.     End-users of Defendants' accused products are also direct infringers of one or more claims of one or more of the patents in suit.

44.     End-users of Defendants' accused products have taken, used, and orally administered the accused products.

45.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of one or more of the patents in suit.

46.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendants to include specific ingredients for certain purposes that, because of their inclusion in the products for such purposes, infringe one or more claims of one or more of the patents in suit, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in those claims.

47.     Defendants' labels and advertising for the accused products explain the elements and essential elements of one or more of the methods disclosed in the patents in suit, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

48.     Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of these patents, and have in fact urged them to do so.

49.    The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods of the patents in suit, that do not infringe upon such methods.

50.    The inclusion of the specific infringing compounds in the products is material to practicing such methods.

51.    Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

52.    Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes of practicing the claimed methods, by having them orally ingest the compounds disclosed in such claims.

53.    Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of the patents in suit.

54.    Defendants have direct, firsthand knowledge of the patents in suit.

55.    For example and without limitation, Defendants have had knowledge of the patents in suit since as early as at least March 6, 2015, when a letter was sent to Defendant Purus Labs informing it of its infringement, to which an initial infringement review was attached, which letter was copied to Purus Labs' retailers and distributors, including its Co-Defendants in this action.  A true and accurate copy of that letter is attached hereto as Exhibit G. Defendant Purus Labs was also the recipient of prior letters with respect to Plaintiff's relevant patents, such notices being sent as early as March 2011.

56.    Defendants have brazenly and willfully decided to infringe the patents in suit despite knowledge of the patents' existence and their knowledge of the accused products' infringements of the patents.

57.     At a minimum, and in the alternative, Plaintiff pleads that Defendants willfully blinded themselves to the infringing nature of the accused products' sales.

58.     Defendants have not ceased their own direct infringements, nor their contributory infringements or inducements of infringements by end-users, despite their knowledge of the patents in suit and their infringing activities with respect to the patents in suit.

59.     Defendants also infringe U.S. Patent Nos. 8,034,836 and 8,455,531, which are currently in re-examination or review before the United States Patent and Trademark Office; at the appropriate time, Plaintiff intends to amend this Complaint to include allegations of infringement with respect to those patents.

## IV.   THE DEFENDANTS' FALSE ADVERTISING, FALSE MARKING, AND FALSE DESIGNATION OF ORIGIN

60.     Defendants have marketed NOXygen-branded products to the general public and the products are labeled in such a way that is misleading to the public.

61.     NOXygen has only one ingredient "blend," which is called the "NO3-TMG Blend." The "blend" contains 740 mg per serving and is comprised solely of "Beet Root Extract (std. min. 70% betaine nitrate), Nitratene (FCC-grade sodium nitrate)."

62.     Consumers purchase dietary supplements, including NOXygen, for their effectiveness and their ingredients. In reality, NOXygen cannot be effective because it does not contain an ingredient in the form it purports to have.

63.     The indication that the product contains "Beet Root Extract (std. min. 70% betaine nitrate)" is intended to mean, and does in fact signify to consumers, that Beet Root has been extracted in such a way that at least 70% of that extract contains the bound betaine nitrate compound – this, however, is an impossibility.

64.     Betaine is also known as Trimethyl Glycine, 2-trimethylammonioacetate, glycine betaine, betaine anhydrous, and N,N,N-trimethylglycine and is a derivative of Glycine. Betaine is an N-trimethylated amino acid. This quaternary ammonium exists as the zwitterion at neutral pH. Betaine can be produced by mixing Glycine with methyl iodide.

65. Nitrates are a class of compounds that are salts of Nitric Acid (HNO3) and at least comprise one Nitrogen atom and three Oxygen atoms (NO3).

66. Betaine Nitrate can generally be made by combining nitric acid and Betaine, mixing with water, and leaving to crystallize.

67. Beet Root is, literally, the root of the beet plant, and a part of the Beta Vulgaris family.

68. While it is true that Beet Root may contain betaine and may also be a source of nitrates, it is scientifically impossible that the compound betaine nitrate can be found in Beet Root, even if an extract of Beet Root is produced.

69. Defendants aggressively market NOXygen-branded products for their high nitrate content, and the inclusion of the betaine nitrate compound is crucial to the market success of the products.

70. Plaintiff supplies and sells betaine nitrate as an ingredient to dietary supplement marketers and manufacturers who compete with Defendants – as such, Plaintiff also competes with Defendants in the relevant market, which, generally, can be described as nitrate-containing products that boost the users' nitric oxide levels.

71. As further alleged in this Complaint, Plaintiff also owns a group of patents relating to nitrate compounds such as betaine nitrate.  Plaintiff thus expends substantial amounts of money and time to protect its competitive advantage in the marketplace as, among other things, a betaine nitrate supplier.

72. In connection with its patented nitrate-related technology, Plaintiff utilizes the NO3-T trademark, which has been allowed for registration with the United States Patent and Trademark Office in Application Serial No. 86/107,909.

73. Plaintiff marks its products that contain the nitrate-related technology with the NO3-T trademark, as do Plaintiff's customers who purchase nitrate-related technology, such as betaine nitrate, from Plaintiff.

74.     In falsely marketing an ingredient in a form which cannot and does not exist in the real world, Defendants falsely represent that NOXygen-branded products have characteristics, uses and benefits which they do not have, and these representations are harmful to Plaintiff's business.

75.     Defendants also falsely represent that NOXygen is of a particular standard, quality, or grade.

76.     Defendants have fraudulently induced consumers to purchase NOXygen by causing them to believe that it contains an ingredient in a form it cannot and does not have.

77.     Each and every sale Defendants make of NOXygen-branded products to consumers believing the products contain "Beet Root Extract (std. min. 70% betaine nitrate)" take sales away from Plaintiff's customers and Plaintiff who are legitimately selling betaine nitrate or beet root extract.

78.     On or about March 6, 2015, Defendants were notified in writing by Plaintiff of Plaintiff's allegations of false advertising and false designation of origin and common law trademark infringement, but they have nevertheless continued selling NOXygen-branded products in a wrongful manner.

79.     Defendants use in advertising in connection with at least some of the accused products, including on the label, statements that the products utilize "patent-pending Nitratene."

80.     On information and belief, no patent application for the "Nitratene" formulation or compound has been made, nor is one pending.

81.     The representation by Defendants that the formulation or compound for Nitratene is "patent-pending" has been made for the purpose of deceiving the public, and for the purpose of competing with Plaintiff, who does in fact have patents on nitrate-related technology.

## V.     FIRST CAUSE OF ACTION

### Infringement of U.S. Patent No. 8,466,187

82.     Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

83.     Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 8,466,187 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

84.     In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringements include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 8,466,187, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

85.     Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 8,466,187.

86.     End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 8,466,187.

87.     End-users of Defendants' accused products have taken, used, and orally administered the accused products.

88.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 8,466,187.

89.     The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes

that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 8,466,187, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

90.    Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 8,466,187, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

91.    Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 8,466,187, and have in fact urged them to do so.

92.    The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

93.    The inclusion of these specific infringing compounds in the products is material to practicing such methods.

94.    Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

95.    Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 8,466,187, by having them orally ingest the compounds disclosed in such claims.

96.     Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 8,466,187.

97.     Defendants also have direct, firsthand knowledge of United States Patent No. 8,466,187.

98.     Defendants' activities have been without express or implied license by Plaintiff.

99.     As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

100.    As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

101.    Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VI.     SECOND CAUSE OF ACTION

### Infringement of U.S. Patent No. 8,569,368

102.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

103.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 8,569,368 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

104.    In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringements include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No.

8,569,368, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

105.   Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 8,569,368.

106.   End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 8,569,368.

107.   End-users of Defendants' accused products have taken, used, and orally administered the accused products.

108.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 8,569,368.

109.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 8,569,368, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

110.   Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 8,569,368, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

111.   Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 8,569,368, and have in fact urged them to do so.

112.   The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

113.   The inclusion of these specific infringing compounds in the products is material to practicing such methods.

114.   Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

115.   Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 8,569,368, by having them orally ingest the compounds disclosed in such claims.

116.   Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 8,569,368.

117.   Defendants also have direct, firsthand knowledge of United States Patent No. 8,569,368.

118.   Defendants' activities have been without express or implied license by Plaintiff.

119.   As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

120.   As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

121.    Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VII.    THIRD CAUSE OF ACTION

### Infringement of U.S. Patent No. 8,569,369

122.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

123.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 8,569,369 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

124.    In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringements include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 8,569,369, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

125.    Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 8,569,369.

126.    End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 8,569,369.

127.    End-users of Defendants' accused products have taken, used, and orally administered the accused products.

128.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 8,569,369.

129.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 8,569,369, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

130.    Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 8,569,369, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

131.    Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 8,569,369, and have in fact urged them to do so.

132.    The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

133.    The inclusion of these specific infringing compounds in the products is material to practicing such methods.

134.    Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

135.    Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 8,569,369, by having them orally ingest the compounds disclosed in such claims.

136.    Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 8,569,369.

137.    Defendants also have direct, firsthand knowledge of United States Patent No. 8,569,369.

138.    Defendants' activities have been without express or implied license by Plaintiff.

139.    As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

140.    As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

141.    Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VIII.    FOURTH CAUSE OF ACTION

### Infringement of U.S. Patent No. 8,952,047

142.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

143.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No.

8,952,047 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

144.    In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringements include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 8,952,047, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

145.    Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 8,952,047.

146.    End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 8,952,047.

147.    End-users of Defendants' accused products have taken, used, and orally administered the accused products.

148.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 8,952,047.

149.    The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 8,952,047, and as a result, when end-users of Defendants' accused products

orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

150. Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 8,952,047, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

151. Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 8,952,047, and have in fact urged them to do so.

152. The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

153. The inclusion of these specific infringing compounds in the products is material to practicing such methods.

154. Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

155. Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 8,952,047, by having them orally ingest the compounds disclosed in such claims.

156. Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 8,952,047.

157.    Defendants also have direct, firsthand knowledge of United States Patent No. 8,952,047.

158.    Defendants' activities have been without express or implied license by Plaintiff.

159.    As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

160.    As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

161.    Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## IX.    FIFTH CAUSE OF ACTION

### Infringement of U.S. Patent No. 8,952,046

162.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

163.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 8,952,046 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

164.    In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringements include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 8,952,046, and these employees, agents, representatives and other persons sponsored by or who

endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

165.   Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 8,952,046.

166.   End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 8,952,046.

167.   End-users of Defendants' accused products have taken, used, and orally administered the accused products.

168.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 8,952,046.

169.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 8,952,046, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

170.   Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 8,952,046, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

171.    Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 8,952,046, and have in fact urged them to do so.

172.    The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

173.    The inclusion of these specific infringing compounds in the products is material to practicing such methods.

174.    Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

175.    Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 8,952,046, by having them orally ingest the compounds disclosed in such claims.

176.    Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 8,952,046.

177.    Defendants also have direct, firsthand knowledge of United States Patent No. 8,952,046.

178.    Defendants' activities have been without express or implied license by Plaintiff.

179.    As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

180.    As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

181.    Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## X.    SIXTH CAUSE OF ACTION

### Infringement of U.S. Patent No. 8,952,045

182.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

183.    Defendants have in the past and still are literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 8,952,045 by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

184.    In addition to the fact that Defendants make, use, sell, and offer for sale the accused products, further examples of Defendants' direct infringements include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 8,952,045, and these employees, agents, representatives and other persons sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

185.    Defendants have encouraged and are aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in United States Patent No. 8,952,045.

186.    End-users of Defendants' accused products are also direct infringers of one or more claims of United States Patent No. 8,952,045.

187.   End-users of Defendants' accused products have taken, used, and orally administered the accused products.

188.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 8,952,045.

189.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 8,952,045, and as a result, when end-users of Defendants' accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

190.   Defendants' labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 8,952,045, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

191.   Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 8,952,045, and have in fact urged them to do so.

192.   The accused products are not suitable for non-infringing uses, and none of Defendants' labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

193.   The inclusion of these specific infringing compounds in the products is material to practicing such methods.

194.     Defendants have knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

195.     Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 8,952,045, by having them orally ingest the compounds disclosed in such claims.

196.     Defendants have knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 8,952,045.

197.     Defendants also have direct, firsthand knowledge of United States Patent No. 8,952,045.

198.     Defendants' activities have been without express or implied license by Plaintiff.

199.     As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

200.     As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringements, which will continue unless Defendants are enjoined by this Court.

201.     Defendants' past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## XI.  SEVENTH CAUSE OF ACTION

### Violations of the Lanham Act, 15 U.S.C. § 1125

202.     Plaintiff incorporates by this reference the foregoing allegations of this Complaint as if fully set forth herein.

## False Advertising – Violation of 15 U.S.C. § 1125(a)(1)(B).

203.    Defendants have made false statements about NOXygen-branded products.

204.    These false statements were made in commercial advertising and in the course of promoting NOXygen-branded products.

205.    Defendants' false statements had the tendency to deceive a substantial segment of consumers purchasing dietary supplements.

206.    Defendants' deception was material, likely to influence the purchasing decisions of consumers.

207.    Sales of NOXygen divert sales from other companies selling betaine nitrate, including Plaintiff's customers.

208.    Plaintiff has been injured as a result of Defendants' false statements by directly diverting sales from Plaintiff to Defendants.

209.    Defendants use in advertising in connection with at least some of the accused products, including on the label, statements that the products utilize "patent-pending Nitratene," even though, on information and belief, no patent application for the "Nitratene" formulation or compound has been made, nor is one pending.

210.    The representation by Defendants that the formulation or compound for Nitratene is "patent-pending" has been made for the purpose of deceiving the public, and for the purpose of competing with Plaintiff, who does in fact have patents on nitrate-related technology.

211.    Plaintiff has been injured as a result of Defendants' false statements by directly diverting sales from Plaintiff to Defendants.

212.    Defendants are therefore liable for false advertising under 15 U.S.C. § 1125(a)(1)(B), substantially injuring Plaintiff.

## False Designation of Origin – Violation of 15 U.S.C. § 1125(a)(1)(A).

213.    Plaintiff uses the NO3-T word mark in connection with the sale of its dietary supplements products and ingredients, and the NO3-T mark is therefore descriptive.

214.    Plaintiff has used the NO3-T mark extensively in connection with the sale of its dietary supplement products and ingredients nationwide, leading to substantial sales.

215.    Plaintiff believes that Defendant Purus Labs has intentionally copied the NO3-T mark in creating the label for NOXygen and, specifically, calling its blend "NO3-TMG", and the remaining Defendants sold the labels with knowledge that Purus Labs had copied the mark.

216.    Plaintiff is the senior user of the NO3-T mark and has continuously used the mark without interruption since as long as August 2013, whereas Defendants have only started using the NO3-TMG mark in March 2014 or sometime thereafter.

217.    Plaintiff has enjoyed market penetration with its NO3-T mark, including through sales of its own products such as Pump-Bol, as well as through sales of patented ingredients to other marketers and manufacturers of supplements who have substantial market penetration.

218.    Defendants' use of NO3-TMG is likely to cause confusion as to the affiliation, connection, or association of NOXygen-branded products with Plaintiff's products, and in particular Plaintiff's NO3-T mark.

219.    For example and without limitation, the NO3-T and NO3-TMG marks are virtually identical; Plaintiff and Defendants are engaged in the same business of selling dietary supplements and ingredients and use the same channels to do so; Plaintiff's NO3-T mark is well-known; and Purus Labs intended to copy the NO3-T mark, and the other Defendants are aware of the mark.

220.    In sum, Defendants have used "NO3-TMG" in the context of interstate commerce in connection with marketing NOXygen-branded products in a manner that is likely to cause confusion, mistake, or deception as to the affiliation, connection, and association of the products with Plaintiff and as to the origin, sponsorship, and approval of the products by Plaintiff, thereby damaging Plaintiff.

221.    Defendants are therefore liable for false designation of origin under 15 U.S.C. § 1125(a)(1)(A), substantially injuring Plaintiff.

222.    The NO3-T trademark has been allowed for registration by the United States Patent and Trademark Office, and Plaintiff intends to amend this Complaint at the appropriate time alleging infringement of a registered trademark once the certificate of registration is issued, under 15 U.S.C. § 1114.

## XII.    EIGHTH CAUSE OF ACTION

### Common Law Trademark Infringement

223.    Plaintiff incorporates by this reference the foregoing allegations of this Complaint as if fully set forth herein.

224.    Plaintiff has used the NO3-T mark prior to Defendants' use of the NO3-TMG mark.

225.    There is a substantial likelihood of confusion between Plaintiff's NO3-T mark and NO3-TMG.

226.    Plaintiff has been injured by Defendants' use of the confusing NO3-TMG mark.

227.    Defendants' use of the NO3-TMG mark has substantially damaged Plaintiff.

228.    Defendants are therefore liable for common law trademark infringement under New Jersey state law.

## XIII.    NINTH CAUSE OF ACTION

### Violation of the False Marking Statute, 35 U.S.C. § 292

229.    Plaintiff incorporates by this reference the foregoing allegations of this Complaint as if fully set forth herein.

230.    Defendants have marked upon, affixed to, and/or used in advertising in connection with certain accused products the term "patent pending" or other words importing that an application for patent has been made, even though, on information and belief, no application for patent has been made, or if made, is not pending.

231.    Defendants intend to deceive the public by their statements.

232.    Plaintiff has suffered competitive injury as a result of Defendants' actions.

233.    Defendants are therefore liable for false marking under 35 U.S.C. § 292.

# XIV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of judgment against Defendants as follows:

1.      A declaration that Defendants have infringed the patents in suit, under 35 U.S.C. §§ 271 *et seq.*;

3.      That injunctions, preliminary and permanent, be issued by this Court restraining Defendants, their respective officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the patents in suit;

4.      That Defendants be required to provide to Plaintiff an accounting of all gains, profits, and advantages derived by Defendants' infringement of the patents in suit, and that Plaintiff be awarded damages adequate to compensate Plaintiff for the wrongful infringing acts by Defendants, in accordance with 35 U.S.C. § 284;

5.      That the damages awarded to Plaintiff with regard to the patents in suit be increased up to three times, in view of Defendants' willful infringement, in accordance with 35 U.S.C. § 284;

6.      That this case be declared to be exceptional in favor of Plaintiff under 35 U.S.C. § 285, and that Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action;

7.      Declaring that by virtue of their false advertising statements, Defendants have violated 15 U.S.C. § 1125(a)(1)(B);

8.      Declaring that by virtue of their use of "NO3-TMG," Defendants have violated 15 U.S.C. § 1125(a)(1)(A) and have engaged in trademark infringement under the New Jersey state common law;

9.      Declaring that by virtue of their false marking, Defendants have violated 35 U.S.C. § 292;

10.    For compensatory, actual, general, statutory, exemplary, punitive, and any other damages legally available according to proof on certain causes of action;

11.    For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

12.    Costs of the proceedings herein;

13.    Reasonable attorneys' fees as allowed by statute; and

14.    That Plaintiff be awarded such other and further relief as this Court may deem just and proper.


                              Respectfully submitted,

Dated:  March 20, 2015


                              _____
                              Lesley McCall Grossberg
                              N.J. Bar No. 21682008
                              BAKER & HOSTETLER LLP
                              2929 Arch Street
                              Cira Centre, 12th Floor
                              Philadelphia, PA  19104-2891
                              Telephone:215.568.3100
                              Facsimile: 215.568.3439
                              lgrossberg@bakerlaw.com

                              OF COUNSEL:
                              Joseph Lucci
                              David Farsiou
                              BAKER & HOSTETLER LLP
                              2929 Arch Street
                              Cira Centre, 12th Floor
                              Philadelphia, PA  19104-2891
                              Telephone:215.568.3100
                              Facsimile: 215.568.3439
                              jlucci@bakerlaw.com
                              dfarsiou@bakerlaw.com

                              *Attorneys for Plaintiff ThermoLife*
                              *International, LLC*

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial for all issues in this case that properly are subject to a jury trial.

Respectfully submitted,

Dated: March 20, 2015

_Lesley M Grossberg_

Lesley McCall Grossberg
N.J. Bar No. 21682008
BAKER & HOSTETLER LLP
2929 Arch Street
Cira Centre, 12th Floor
Philadelphia, PA  19104-2891
Telephone:215.568.3100
Facsimile: 215.568.3439
lgrossberg@bakerlaw.com

OF COUNSEL:
Joseph Lucci
David Farsiou
BAKER & HOSTETLER LLP
2929 Arch Street
Cira Centre, 12th Floor
Philadelphia, PA  19104-2891
Telephone:215.568.3100
Facsimile: 215.568.3439
jlucci@bakerlaw.com
dfarsiou@bakerlaw.com

*Attorneys for Plaintiff ThermoLife International, LLC*